JOHN V. R. CRAMER, *et al.*, Appellants, *vs.* THE AMERICAN MERCHANTS UNION EXPRESS COMPANY, AND THE MERCHANTS DISPATCH COMPANY, Respondents.

1. *Common carriers—Liability for disposition of goods at the end of their line—Due diligence.*—Goods designed to be delivered at Vicksburg, Miss., were delivered at New York to a common carrier whose line extended only to St. Louis and were receipted for by the carrier, as shipped " via. St. Louis, care of St. Louis & Vicksburg Packet Co., for A, B. & C., Vicksburg, Miss." At the time of the arrival of the goods at St. Louis, there was no company or person in existence in St. Louis, or having an office or place of business there under the name of the St. Louis & Vicksburg Packet Co. The carrier thereupon, shipped the goods on a first class steamer on which it was usual and customary to ship goods from St. Louis to Vicksburg. The steamer was sunk on her way down and the goods partly lost, partly damaged and all detained. On suit against the carrier for such loss, damage and detention, *Held*, that it was proper for the carrier, having carried the goods to St. Louis, to store them or to forward them at once, as might be most expedient, regard being had to the nature of the goods, and that having, in the exercise of a sound discretion, forwarded them by a usual mode of transportation, the carrier's liability ceased.

2. *Common carriers—Forwarders—Notice to consignors or owners.*—A carrier who receives goods, as such, and forwards them to their destination from the end of his line in the exercise of a sound discretion, cannot be held responsible for want of notice of his action to the owner or consignor. Such responsibility would grow out of his duty as a forwarder, and could not be set up in a suit brought against him simply as a carrier.

*Appeal from St. Louis Circuit Court.*

*Marshall & Barclay*, for Appellants.

I. No common carrier is bound to do more than he contracted to do. In this instance there was no contract that placed this defendant in the position of a forwarder of goods, nor was there any authority in the contract to warrant the defendants' assuming the duties of a forwarder.

II. The defendant had no authority to deliver the goods in question to any consignee save the St. Louis and Vicksburg Packet Company at St. Louis, or to Cramer, Hume & McCown, if they had demanded them at St. Louis.

If the St. Louis and Vicksburg Packet Company were the consignees whom the defendant contracted with reference to, then, upon a failure to find these consignees, it became the

duty of the common carrier to store the goods in a safe warehouse, and notify the consignor, who then became the owner of the goods, or else to hold them and notify the consignor. (Ang. on Cor., 326; Chicago & Alton R. R. Co. vs. Scott, 42 Ill., 132; Norway Planes Co. vs. Boston & Maine Railway, 1 Gray, 263; Fox vs. Holt, 36 Conn., 550; Linn vs. N. I. S. Co., 49 N. Y., 442; Par. Con. B. 186, 210; 3 Bro. & Bing., 177; see also Stephenson vs. Hart, 4 Bing., 476; Duff vs. Budd, 3 Br. & B., 177; Hudson vs. Baxendale, 2 Hurl. & N., 575; Ostrander vs. Brown, 15 Johns., 39; Fisk vs. Newton, 1 Denio, 45; Stone vs. Watt, 31 Maine, 409; Hemphill vs. Cheene, 6 W. & S., 62; Redfield on Contracts, 241 and 256; Redfield on Railways, p. 76, cl. 18 ch. 26 S. 175, 4th Ed.; Halford vs. Adams, 2 Duer., 471; Lithtenheen vs. Boston & Providence R. R., 11 Cush. R., 70.)

Upon question of delivery, see also American Express Co. vs. Fletcher, 6 American Law Register, N. S., 21; Redfield's American Railway Cases, p. 72, and 74; 5 Barn. and Ald., 53; 3 Brod. and Bing., 177; 5 T. S., 389; Gibson vs. Culver, 17 Wend., 305; 6 Wharton, 505; Adams Express Co. vs. Darnell, 31 Ind., 20; Young vs. Smith, 3 Dara, 92; Hall vs. B. & W. R. R., 14 Allen, 439; The Santee, 2 Ben., 519; The Thames, 10 Wallace, 98, and 7 Bl. C. C., 226.)

If the goods are delivered contrary to the instructions of the consignor, whether written or verbal, the common carrier is liable. (16 Mich., 463; Redfield's Am. R. Cas. 77.)

III. Taking into consideration, that the defendant only contracted to convey the goods as far as St. Louis; that the freight was only paid to St. Louis, and that the St. Louis and Vicksburg Packet Company is the only consignee at St. Louis mentioned in the bill of lading, we are bound to conclude that the St. Louis and Vicksburg Packet Company was the consignee; and hence that a failure to deliver the goods to them, or to store them or hold them and notify the consignor, makes the defendant liable as for a conversion. (C. & N. W. R. R. vs. Merrill, 48 Ill. 425.)

*Daniel Dillon,* for Respondents.

The ultimate destination of the goods being known, and also the means of transportation .which the shipper meant to employ, what was the duty of respondent, when, on arrival of the goods at St. Louis, it ascertained that the intermediate consignee to whom it was directed to deliver the goods at that point did not exist?

In Steamboat Keystone vs. Moies, (28 Mo., 245;) the court says the carrier's duty in such a case, "is to regard himself as the agent of the owners, and as such, invested with authority to take such steps as will advance the owners' interest and purposes, consistently with a reasonable security himself for his freight and charges." Regarding the respondent as the agent of the owner of the goods, when they arrived in St. Louis, with authority as such agent to take such steps as would advance the owners' interest and purposes, was it not justified in forwarding the goods to their point of destination, by usual and customary means of shipping such goods to that point? Respondents contend that it was not only justified in so doing, but that, under the circumstances, its duty to do so was so plain that to have pursued any other course would have rendered it liable.

The shippers and owners had manifested to respondents their purpose of having the goods forwarded from St. Louis to Vicksburg, by means of river transportation; this it did by shipping the goods in care of St. Louis & Vicksburg Packet Company, at St. Louis. This, together with the admission that respondent shipped the goods on a first class steamboat, on which it was usual and customary to ship such goods from St. Louis to Vicksburg, shows that the respondent did what a man 'of ordinary prudence acting as agent for the owners, would do under the circumstances. And this court has said in the case of the Steamboat Keystone vs. Moies, (28 Mo., p. 246,) that if he pursues such a course, "he is protected by the law, whatever may be the result."

Respondents contend that the case comes clearly within the principle of the case just referred to, and that, applying the rule

laid down in that case to the admitted facts of the case at bar, it fully sustains the action of the court below.

ADAMS, Judge, delivered the opinion of the court.

This was an action on a contract of affreightment brought by the plaintiffs, residing at Vicksburg, Mississippi, against the defendant, as a common carrier, for damages for failing to deliver goods at St. Louis, according to the terms of a bill of lading by which they were shipped from the city of New York.

The ultimate destination of the goods was Vicksburg, the residence and place of business of the plaintiffs, who were merchants. By the terms of the bill of lading the defendant was only to carry the goods to St. Louis, Missouri. The goods were marked "Cramer, Hume & McCown, Vicksburg, Miss., care St. Louis & Vicksburg Packet Co., St. Louis, Mo."

The receipts given by the defendant to the shippers in New York as the goods were being delivered, were to the same effect, and in the following form : "New York, October 2nd, 1869. Shipped on board the M. D. via St. Louis & Vicksburg Packet Co., for Cramer, Hume & McCown, Vicksburg, Miss."

The defendant is a common carrier, its line being from New York to St. Louis. The goods were received by defendant, as above, at New York, on the 2nd day of October, 1869, and in due time were safely conveyed to St. Louis. For the purpose of the trial, the plaintiffs admitted "that at the time the goods in question arrived in St. Louis, there was no company, or person or persons in existence in St. Louis, having an office or place of business in St. Louis, named or known as the Vicksburg Packet Company ; and that the W. R. Arthur at that time was a first class steamer, in which it was usual and customary to ship goods of this kind from St. Louis to Vicksburg, Miss." When the goods reached St. Louis, the defendant being unable to find the consignee, and there being no such consignee in existence as the St. Louis & Vicksburg Packet Company, shipped the goods to plaintiffs at Vicksburg, on board the above named steamboat, W. R. Arthur. The Ar-

thur was sunk ; a part of the goods were lost, a part were damaged, and the whole of them detained some four weeks longer than was necessary to make the trip from St. Louis to Vicksburg, and reached the plaintiffs too late to be sold, except at a great sacrifice, that season. The plaintiffs expended large sums of money in looking up the goods and recovering possession of the same.

It does not appear that the defendant notified the consignor or the owners at Vicksburg, that it could not find the St. Louis & Vicksburg Packet Company at St. Louis; nor did the consignor, or owners at Vicksburg know what had become of the goods until the plaintiffs found them in possession of the Board of Underwriters at St. Louis.

The defense relied on by the defendant in its answer, was, that when it failed to find the consignees in St. Louis, it had the right to ship the goods to the plaintiffs, and that by shipping them on the steamboat Arthur to the plaintiffs at Vicksburg, it had performed its whole duty.

The plaintiffs gave evidence, in addition to the above facts, of the amount of damages they had suffered. On the case as thus made the court, at the instance of the defendant, declared the law to be, that the plaintiffs, on the evidence given, were not entitled to recover. The plaintiffs excepted to this ruling of the court, and took a non-suit with leave to move to set it aside, which motion was duly made and overruled, and the plaintiffs excepted.

The judgment of the Special Term was affirmed by the General Term, and the plaintiffs have brought the case here by appeal.

The principle that a common carrier, who has performed nis duty by safely carrying goods to their destination, according to the terms of the bill of lading, can ordinarily relieve himself from further responsibility, as such, by storing them in a safe warehouse, is too familiar, and too well settled by the authorities to need illustration. (See Ang. on Carriers; Norway Planes Co. vs. Boston & Maine Railway Co., 1 Gray., 263; Chicago & Alton R. R. Co., vs. Scott, 42 Ill., 132; Stephenson vs. Hart, 4 Bing., 476, &c.)

This principle results from the fact, that when the consig-nee cannot be found or has no existence, the common carrier becomes the agent of the owner and ought to take such care of the owners' property as a prudent man would of his own. Cer-tainly he may discharge himself from his duties as common car-rier by storing the goods in a safe warehouse, and thus retain his lien for the freight, when the goods are such as may be stored without injury. But if the goods are such as will decay by detention it might become his duty to forward them at once, or have them sold for the benefit of the owners. (See Steamboat Keystone vs. Moies, 28 Mo., 243.)

It is evident from the facts of this case that the sole object of the plaintiffs was to have their goods forwarded to them from New York to Vicksburg. The defendant's line only extended to St. Louis, and by the terms of the bill of lading the goods were to be delivered to "The Vicksburg Packet Company" at St. Louis. As this company was not in exis-tence and had no agency at St. Louis when the goods arrived, did not the defendant, as agent of the owners, exercise a sound discretion and act as prudence would dictate in forwarding the goods at once by a first class steamboat? This was ex-actly what the plaintiffs desired, as manifested by the ship-ment from New York.

If the defendant had stored the goods in St. Louis and they had been consumed by an accidental fire, the question might have arisen, whether it was not a paramount duty on its part to have forwarded them at once, instead of retaining them in St. Louis. But considering the kind of goods, which were merchandize bought for re-sale in Vicksburg, I think a com-mon carrier, under the circumstances, ought to be relieved from further responsibility, as such, by adopting either course.

He would have the right to retain his lien for the freight on the goods, and for that purpose, and for the protection of the owner he might store them or he might forward them and receive his freight and charges from the second carrier, or risk the owners for payment.

In my judgment, the carrier in this instance pursued the course best calculated to promote the interests of the owners, and by delivering the goods to the steamboat was wholly relieved of all further responsibility as a common carrier.

The question of want of notice to the owners or consignors of the shipment on the steamboat, Arthur, does not arise in this case. If any responsibility at all attaches for the want of such notice, it does not grow out of the defendant's character as a common carrier, but as a forwarder of goods; and it is not sued as a forwarder, but as a common carrier.

Under this view, the demurrer to the plaintiffs' evidence was properly sustained. Judgment affirmed. Judge Wagner absent; the other judges concur.

