THE WILSON SEWING MACHINE COMPANY, *Appellant*, v. THE LOUISVILLE & NASHVILLE RAILROAD COMPANY.

1. **Consignee Non-resident at point of Delivery**: DELIVERY TO CONSIGNOR'S AGENT. The fact that a consignee does not reside at the point where goods are to be delivered, and does not expect to be there to receive them, will not authorize the carrier to deliver them to a general agent of the consignor resident there.
2. **Instructions.** It is not essential that an instruction which undertakes to define the principal rule of liability in a case, shall state all the exceptions to the rule which may arise under the pleadings and evidence. If these are correctly stated in one or more separate instructions, it is sufficient.

3. ———: CASE ADJUDGED. The defense to an action by a consignor against the carrier for the conversion of certain sewing machines which had been consigned to K at M, was in substance, that K did not live at M, and did not expect to be there to receive the machines; that it was understood between plaintiff and defendant that on arrival at M they were to be delivered to B & S, who were plaintiff's agents and dealt in sewing machines of plaintiff's manufacture at M, and that they were so delivered. Among the evidence offered by defendant was testimony tending to show that B & S had obtained the machines by representing to defendant's agents that they were intended for them. For the plaintiff the court instructed the jury, in substance, that defendant was bound to deliver the machines to K, and that the mere fact that B & S had made such representations and had thus obtained the machines, was no defense, if the representations were untrue in fact; and further instructed that the fact that K was not and did not intend to be at M, did not of itself justify defendant in delivering the machines to B & S. For defendant the court instructed, in substance, that if they found that the understanding alleged in the answer existed, their verdict should be for defendant. *Held*, that these instructions, taken together, put the case fairly before the jury.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*J. H. Wieting* and *Geo. M. Stewart* for appellant.

1. It was the duty of defendant to deliver the machines to the persons named in the bills of lading. *Bristol v. R. R. Co.,* 9 Barb. 158; *Jeffersonville R. R. Co. v. White,* 6 Bush (Ky.) 251; *Winslow v. R. R. Co.,* 42 Vt. 700; *McEntee v. Steamboat Co.,* 45 N. Y. 37; *Price v. R. R. Co.,* 50 N. Y. 213; *Thorne v. Tilbury,* 3 Hurls. & N. 534; *Angle v. R. R. Co.,* 9 Iowa 488; *s. c.,* 18 Iowa 555; *Alderman v. Eastern R. R.,* 115 Mass. 233; 2 Redfield on Railways, (5 Ed.) p. 203.

2. Plaintiff's instructions numbers one and two were not calculated to mislead the jury, and are not inconsistent with the others given in the case. On the contrary, taken in connection with the others, they put the case properly before the jury. *Henschen v. O'Bannon,* 56 Mo. 289;

*Kitchen v. R. R. Co.*, 59 Mo. 514; *Prewitt v. Martin*, 59 Mo. 335; *Budd v. Hoffheimer*, 52 Mo. 303; *Porter v. Harrison*, 52 Mo. 527.

*C. M. Stephens* and *Dryden & Dryden* for respondent.

The first and second instructions given for plaintiff are so framed as necessarily to confuse and mislead the jury. All the facts supposed in them were admitted, and the instructions are peremptory that, if those facts exist, they shall find for the plaintiff. They carefully ignore the issue in the case and the evidence in support of it, viz.: That the delivery to Beach & Sutherland was with the assent of the plaintiff. Had the court told the jury in plain words that, upon the facts assumed, the law, in the absence of proof of a contrary agreement, would imply an agreement to deliver to the consignee, or to hold or store for him, it would have been well enough; and the jury would have understood that they were at liberty to consider and be governed by the evidence which tended to show the plaintiff's assent to the delivery to Beach & Sutherland, but they were not so told, and without such explanation the jury would not regard themselves as having any such liberty, and under this false and erroneous direction the jury most naturally reached a false verdict. In vain might we contend before the jury that the evidence proved the delivery to Beach & Sutherland was by the direction and with the consent of the plaintiff, and therefore a proper delivery. To refute us, it was only necessary to point to the second instruction, which showed that all such proof was unavailing. Nothing under that instruction would deliver the defendant, but a holding or a storing of the goods for the owner. The issue and the proof of it were not of the slightest consequence.

NAPTON, J.—The only question of importance in this case is the propriety of the instructions given by the court. As the principal objections to them were not so much on

account of any defects in them, as abstract declarations of law, as their inapplicability to the facts proved, and the points in issue and their tendency to mislead and confuse the jury, it is necessary, in order to determine the force of such objections, to state the facts in evidence. In doing this, I will be understood as stating them as found by the jury, where there is any discrepancy in the testimony, though I must acknowledge that, after a careful examination of this evidence, which consists entirely of depositions and documents accompanying them, it requires considerable critical acumen to discover any material variances.

The action is one brought by the shipper of goods against the carrier for breach of contract of affreightment. There were five different consignments, of date June 1st, June 29th, July 25th, August 24th and October 6th, all in 1872, and there are five counts in the petition, but they are precisely alike, except as to dates and amounts. The first count charges that, on June 1st, 1872, the plaintiff delivered to defendant thirty-six boxes of sewing machines, worth $1,112, consigned to T. Kendall, Memphis, Tenn.; that defendant failed to deliver the same; alleges the plaintiff's ownership, the defendant's conversion of the goods, &c., in the usual form. The defense set up in the answer is that, although the goods were consigned to T. Kendall, "it was intended by plaintiff, and well understood by both plaintiff and defendant, that, on the arrival of said goods at Memphis, the said Kendall not being there, (and not expecting to be,) to receive said goods, the goods were to be delivered to Beach & Sutherland, dealers in sewing machines of plaintiff's manufacture," on whose order they were shipped, and to whom the defendant had previously delivered several packages, with consent of plaintiff, and that the goods in question were thus delivered in pursuance of this understanding. The answer further states that this last delivery was known to plaintiff, and assented to and ratified, and no objection made until one year after delivery, and after it was discovered that the price could not be col-

lected of Beach & Sutherland. It is further alleged that Beach & Sutherland were plaintiff's agents at Memphis, and as such, authorized to receive the consignments.

The facts, as sought to be proved by plaintiff, and as I presume the jury found them to be, were, in substance, these: The plaintiff was a corporation having a large manufactory of sewing machines in Cleveland. Beach & Sutherland were dealers in these machines in Memphis. In 1870 they had a contract, in writing, by which the sewing machine company were to furnish them, from time to time, with sewing machines, at a certain price below that at retail, in consideration that the firm of Beach & Sutherland would devote themselves exclusively to the selling of such machines, and would take a certain number each year. Beach & Sutherland were to pay cash for all machines ordered, until a certain mortgage was given. As the mortgage was not given, the machines were always consigned to some third party, and the bills of lading were taken in the name of the consignees. To these bills of lading were attached drafts on Beach & Sutherland, and these bills of lading and drafts were sent to a bank in Memphis, with directions that the bills of lading were not to be delivered to Beach & Sutherland until the drafts were paid. In regard to the shipments from June 1st to October 6th, 1872, the subject matter of this action, the consignments were to different employees of the plaintiff at Cleveland, and the boxes were marked with the name of the consignee, and, according to the testimony of plaintiff's witnesses, marked on the outside of each box, in large letters, from a stencil plate, with this direction: "To be delivered to the consignee only, or his order." The freight agent of defendant, however, stated that, if there was such direction, he did not observe it, and thought he would have observed it had it been on the boxes. However this may have been, the bills of lading were made out, as before stated, in the name of the consignee, and these bills, with an order on the freight agent at Memphis, signed by the consignee, directing him

to deliver the goods, on their paying freight, to Beach & Sutherland, and the drafts of plaintiff on Beach & Sutherland for the price, payable on or before four months after date, and an itemized bill of the goods made out in the name of Beach & Sutherland, and marked paid, and a transcript from plaintiff's order book, showing particulars of the shipment, were all tacked together and deposited in the First National Bank in Cleveland. This bank immediately sent all these papers to a bank in Memphis, with a letter of instruction not to deliver to Beach & Sutherland any of these papers until they paid the drafts or secured them. These five shipments all reached Memphis, and were delivered immediately to Beach & Sutherland, and freight bills made out in the name of the consignee. . It appeared that, usually, it took from ten to twelve days for freight to go from Cleveland to Memphis, and of course Beach & Sutherland would be apprised by mail of the intended shipments in time to make arrangements with the bank to procure the necessary papers for their delivery to them. There was a good deal of testimony as to the limit of the credit which plaintiff was to extend to Beach & Sutherland, but, as it has no connection whatever with the present controversy, it is unnecessary to recite it. There was no evidence of any communication between plaintiff and defendant on the subject until, in November, 1872, the plaintiff first discovered that none of these five consignments had been paid for or the drafts secured, and yet they had all been delivered to Beach & Sutherland. An employee or agent was then sent to Memphis to inquire into the matter, and some proposals were made to the defendant, which were not agreed to. These are all the facts material to a consideration of the instructions, and their applicability to the case.

I must, however, not omit the exclusion by the court of a portion of Mr. Beach's deposition, at the instance of plaintiff, which is thus stated in the printed abstract: "*Question:* State if you used any means of advertising your business?" " *Answer:* I advertised mostly during 1871

and 1872, in the weekly papers of country towns in Tennessee, Mississippi and Arkansas. Frequently copies of these papers were mailed to plaintiff. It was two years ago, and the papers named were destroyed. These advertisements described the merits of the machines, and that Beach & Sutherland were the general agents of the Wilson Sewing Machine Company at Memphis. They never objected to this, and I don't know why they should." This question and answer were excluded on objection of plaintiff to the same, as incompetent and irrelevant, and defendant duly excepted to the ruling of the court.

It appeared further, that the defendant had been in the habit, for a year or more previous to these five shipments, of delivering all machines sent to Memphis to B. & S., no matter how they were consigned, and that Mr. Beach had told some one of its agents that the machines were intended for him, and that he supposed the different names on the boxes and in the way-bills were intended merely to distinguish the shipments.

On the facts appearing at the trial, the court instructed the jury, at request of plaintiff as follows: 1. "When a railroad company receives goods for transportation, which are marked and directed to certain persons at a certain place, the law implies an agreement, on the part of the railroad, under ordinary circumstances, to transport the goods to such place, and there deliver them to, or have them held or stored for the persons to whom they are addressed. A railroad company, in delivering goods, is bound to take care that they are delivered to the proper parties, and it is no excuse for a wrong delivery that it was made through mistake, or because the railroad was deceived by the statements of third parties, who claimed the goods. And the court, therefore, instructs the jury that, of itself, it is no defense to the railroad in this case that Beach & Sutherland represented to them that the machines in question were intended for them, and that the marks on the

14—71

boxes were put thereon merely to distinguish the shipments, if such representations were untrue in point of fact."

2. "It is the duty of a railroad company, where goods are safely conveyed to the place of destination, and the persons to whom they are directed are absent or cannot be found, either to hold said goods or to have them stored in some safe place for the owner, and in this case the mere fact that the several consignees named in the freight bills of these machines were not and did not intend to be in Memphis upon the arrival of the goods at that place, did not, of itself, justify defendant in disregarding the names and marks upon the boxes, or delivering them to third parties."

3. "The mere fact that the machines in question were shipped to Memphis on the order of Beach & Sutherland, as purchasers, did not entitle them to their possession on arrival, if the goods were consigned to other names for the purpose of preventing said Beach & Sutherland from getting them, until they had paid the drafts drawn against them, or obtained from the bank the papers authorizing their delivery."

4. "The delivery of the machines in question to Beach & Sutherland immediately on their arrival in Memphis was not warranted or authorized by the marks and directions upon the boxes, and in order to justify said delivery it devolves upon the defendant to prove to the satisfaction of the jury, either that it was plaintiff's intention, notwithstanding said directions and marks, that said Beach & Sutherland should get the goods on merely paying the freight charges on the same, or else that plaintiff induced defendant to believe that such was its intention; and the defendant is not excused for delivering the goods to Beach & Sutherland through mistake, unless it appears that plaintiff caused the mistake in some way. If, therefore, the jury believe that defendant was imposed upon by Beach & Sutherland, and acted merely on what they said, and had no other knowledge of plaintiff's intentions, except as

they were expressed by the marks upon the way bills and boxes, then it made the delivery at its peril; and if, in fact, Beach & Sutherland were not to have the machines, without presenting the bills of lading or orders from the bank, then said delivery was wrongful."

5. "It makes no difference in this case, as far as the liability of defendant is concerned, what information the plaintiff had from Beach & Sutherland as to their reception of machines from time to time, unless defendant also knew, or was induced by the conduct of plaintiff to believe, that plaintiff had such information, and was thereby misled into supposing that plaintiff approved this manner of delivering the goods."

6. "The mere fact that the plaintiff knew that Beach & Sutherland were getting possession of machines consigned to Memphis to the names of third parties, before paying the drafts drawn against the shipments, cannot avail defendant, unless it further appears that plaintiff knew that the machines were being delivered by the railroad without presentation of the bills of lading or orders on the freight agent, and under a mistaken impression on the part of the railroad company that such delivery was in accordance with plaintiff's intentions."

7. "The mere fact that plaintiff, after it discovered that defendant had delivered the machines in question to Beach & Sutherland on their arrival in Memphis, attempted to collect the price of the same from said firm, is and was not sufficient to constitute a ratification of the acts of defendant in so delivering said goods, unless plaintiff intended thereby to waive its claim against defendant for an improper delivery, and to treat the said delivery as having no relation to the delay or default of said Beach & Sutherland in paying for said machines."

8. "There are five counts in the petition, covering five different consignments of machines, and the jury will have to find a verdict on each count separately. If, therefore, they find for the plaintiff on any or all of the counts,

they will assess its damages separately on each count on which they so find, and will estimate the damages at such sum as they shall find, from all the evidence in the case, is equal to the actual market value of the machines in Memphis at the time of their delivery to Beach & Sutherland, and they may add interest on such sum at the rate of six per cent from the time of such delivery."

And the following instructions were given at the request of defendant:    1.    "If at the time the defendant received from the plaintiff the goods mentioned in the several counts of the petition for transportation, it was the understanding of the plaintiff and defendant that said goods were to be delivered on their arrival in Memphis to said Beach & Sutherland, the verdict of the jury should be for the defendant."

2.    "If Beach & Sutherland ordered and purchased from the plaintiff the goods in the several counts of the petition mentioned, on credit, and at the time of the shipment of said goods by the plaintiff, it was the understanding between the plaintiff and said Beach & Sutherland, that said goods should on their arrival in Memphis, irrespective of the payment of the purchase price thereof, be delivered to said Beach & Sutherland, in that case, the verdict of the jury should be for defendant "

3.    " Although, as between the plaintiff and said Beach & Sutherland, the latter were not authorized to have or receive the goods mentioned in the several counts of the petition, until they had first paid the purchase price thereof, yet, if at the time defendant received said goods from the plaintiff for transportation, the defendant was ignorant of said Beach & Sutherland's said want of authority, and was resting under the belief, caused by acts or conduct of the plaintiff, that said Beach & Sutherland had authority from the plaintiff to receive said goods on their arrival in Memphis, and if, at the time the plaintiff so delivered said goods to the defendant, the plaintiff was aware of the defendant's said belief, but failed and neglected to disabuse the defend-

ant of its said error, the plaintiff is estopped to complain that the delivery to said Beach & Sutherland was a wrong delivery, and the verdict should be for defendant."

The following instruction, asked by defendant, the court refused to give: 4. "If the jury believe from the evidence that when the machines received from the plaintiff for transportation reached Memphis, the consignees were non-residents of Tennessee, and did not expect to be in Memphis to receive said shipments; that the defendant thereupon delivered said goods to Beach & Sutherland; that said Beach & Sutherland were either the general agents of plaintiff or were permitted by plaintiff to hold themselves out as such, then they will find for the defendant."

The jury found a verdict for plaintiff on all the counts of the petition, and assessed the total damages at $5,033, which was the value of the goods as billed to Beach & Sutherland, without interest. The usual motions for new trial and in arrest of judgment were made and overruled, and defendant appealed to the St. Louis court of appeals, where the judgment was reversed.

In regard to the excluded evidence of Mr. Beach, it may be sufficient to say that its exclusion or admission was of no consequence, since the same point was virtually decided by the court in refusing the defendant's last instruction, and in giving all that were asked by plaintiff. There was abundant evidence to show that Beach & Sutherland held themselves out to the world as general agents of plaintiff, and with the consent of plaintiff, and that they were, in fact, general agents, in a certain sense, of plaintiff. For instance, Mr. Beach produced a copy of a letter-head, which the plaintiff had printed in Cleveland, for the firm of Beach & Sutherland, at the expense of said firm, reading thus: "Office of Beach & Sutherland, General Agents, Wilson Sewing Machines, 393 Main street, Memphis, Tenn." Now, if the fact that Beach & Sutherland were general agents of plain-

1. CONSIGNEE NON-RESIDENT AT POINT OF DELIVERY: delivery to consignor's agent.

tiff would justify the railroad company in delivering to them goods consigned, not to the " Wilson Sewing Machine Company," but to Thomas Kendall, then the instructions of the plaintiff are manifestly wrong, and the refusal of the last one offered by the defendant was erroneous. But it is not seriously contended that this is the law, or that a delivery to an agent of the consignor would be a compliance with the duty of the carrier. The carrier was authorized to deliver to the consignee or his order, but that gave no authority for a delivery to the general agents of the consignor. To say nothing of the cumulative character of the testimony, it had nothing to do with the defense set up, and its exclusion or admission was of no importance.

The two first instructions for plaintiff are objected to, as calculated to confuse and mislead the jury, because, as 2. INSTRUCTIONS. we understand the objection, the hypothesis of an establishment of the defense relied on, of an agreement to which plaintiff was a party or privy, is not stated as an exception to the general proposition stated in the instruction. These exceptions are clearly stated in the instructions given for defendant, in which the jury are told that, if the goods were delivered not in conformity to the law, as stated in the first instruction of plaintiff, by reason of an understanding to that effect between plaintiff and defendant, or between plaintiff and Beach & Sutherland, or although without any such understanding between either, was yet caused by acts or conduct of the plaintiff which misled the defendant, they would find for the defendant. The exception, then, to the first, and, indeed, all the instructions for plaintiff, was given, but in separate instructions, and the objection resolves itself into the proposition that the general rule and the exceptions must all be stated in a single instruction. It was not unusual formerly for judges presiding at the trial of cases by juries to give what was called a charge or instruction upon the whole law of the case, couched in such terms as the judge preferred, but as business multiplied and time became important, such

investigations and conclusions, written out by the presiding judge, are dispensed with, and the counsel on either side are expected to prepare their res~~ctive views of the law applicable to the case, and the court merely selects such offered on either side as he thinks sufficient and appropriate. All such as are given are presumed to be examined and read by the jury, and, if they are inconsistent with each other, and contradictory, error is of course committed, but if they are not so, and altogether lay down the law correctly, there is no ground for complaint. Such has been the uniform decision of this court.

The additional objection to these two instructions, that they referred to two facts not at all disputed, and having no connection with the defense set up, and were therefore calculated to mislead the jury, is certainly a singular one, looking at the instructions for defendant and the manifest object of the testimony in regard to the absence of Kendall and the other consignees from Memphis, and that they had on intention whatever to be in Memphis to receive the goods, and that Beach & Sutherland represented to defendant that these marks on the boxes were merely intended to distinguish the shipments. These two facts were prominent and leading ones, which, in connection with others, were relied on by defendant to establish their defense under the instructions given for them. It was necessary, therefore, for the court to instruct the jury in regard to them; and, whether necessary or not, if the law was correctly expounded in the instructions, it cannot be said that they were outside of the case.

The verbal criticisms upon the instructions we think it unnecessary particularly to discuss. The instructions are all copied in this opinion, and it will be seen, I think, upon perusal, that they are, upon the whole, such an exposition of the law of the case as could not be misunderstood by an intelligent jury. That they were not misled and did not misunderstand, is shown by their verdict, which was obviously for the right party. That they re-

fused to give interest, only shows that they sympathized with defendant for a loss occasioned by the carelessness of employees, and were not disposed to give the plaintiff any more than, under the instructions and evidence, they were obliged to give. The proofs in regard to the answer of Beach when an explanation was asked of him of the marks on the boxes, consigning them to various strangers, show that the attention of the employees was called to the subject, and a gross degree of carelessness in remaining satisfied with such an explanation as was given.

It is not thought necessary to discuss the propositions of law contained in the instructions, or cite authorities in support of them, because no point is made in this court on that subject. They are to be found cited in the brief of the plaintiff's counsel. It seems quite certain that if the law is not as stated in these instructions, then such arrangements as were proved in this case to have been made, would be perfectly futile to secure the object in view, which was the same with some modifications as are usually obtained by the C. O. D. mark so frequently used in single shipments of small amount. The caution of the plaintiff seems to have been singularly explicit and minute to prevent the delivery of these goods to Beach & Sutherland. The superscription on each box, "to be delivered to the consignee only or his written order," may be stricken out, and the law is the same.

The instructions for the defendant were exceedingly favorable to him. There was certainly no evidence of any direct communication between the plaintiff and defendant on this point or any other, except the marks on the packages, and none, if any, communication between plaintiff and Beach & Sutherland on this subject, though letters between them are produced. Yet the court went further and allowed the jury to find for defendant, if "the acts or conduct of plaintiff" could lead them to an inference that the goods were really intended to be delivered to Beach & Sutherland. The instructions are undoubtedly correct, yet

there would have been some plausibility in objections from the plaintiff on the ground of want of evidence to justify them.

Upon the whole, all the judges (except NORTON, J., who did not sit in the case) concur that the judgment of the circuit court was right, and consequently that of the court of appeals must be reversed, which is done accordingly.