GASHWEILER v. THE WABASH, ST. LOUIS AND PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Railroad:** COMMON CARRIER: WAREHOUSEMAN. The liability of a railroad as a common carrier of goods ceases, and as a warehouseman commences, after their discharge from the cars on arrival at their destination.

2. ———: ———: ———: NOTICE. Nor is notice by the railroad to the consignee of the arrival of the goods at their destination necessary to effect a change from the liability of a common carrier to that of warehouseman.

3. **Warehouseman:** DEGREE OF CARE: CONTRACT. A warehouseman is only answerable for loss occasioned by the want of ordinary care and skill, but he may restrict his liability by contract, except as to loss occurring through his fraud or want of good faith.

*Appeal from Randolph Circuit Court.*—HON. GEO. H. BURCKHARTT, Judge.

REVERSED.

*George B. Burnett* and *George S. Grover* for appellant.

Under the pleadings and the evidence, plaintiff was

Gashweiler v. Wabash, St. Louis and Pacific Railway Company.

not entitled to recover. It was not liable as a common carrier, for the transit was ended and the goods were safely stored before the fire. Angell on Carriers, sec. 304; Story on Bailments (9th Ed.), secs. 448 and 538; *Thomas v. R. R.*, 10 Met. 472; *Noway, &c. v. R. R.*, 1 Gray 263; *Rice v. Hart*, 118 Mass. 208; *Holtzclaw v. Duff*, 27 Mo. 394; *Cramer v. Express Co.*, 56 Mo. 524. Nor was it liable as a warehouseman for hire by reason of its failure to provide a fire-proof building for storage. A warehouseman is not liable for losses by fire unless he has been guilty of ordinary negligence. Story on Bailments (9th Ed.), sec. 446; *Francis v. R. R.*, 25 Ia. 60; *Holtzclaw v. Duff*, 27 Mo. 392. Under the contract read in evidence, defendant was not required to furnish a warehouse at all. It was one which as a warehouseman it could lawfully make. Story on Bailments (9th Ed.), secs. 32 and 79. The instructions given for plaintiff were based on an erroneous theory, while defendant's refused ones rightly declared the law.

*U. S. Hall* and *J. Montgomery, Jr.* for respondents.

(1) The liability of a railroad as a warehouseman after its liability as a common carrier ceases is that of a bailee for hire, and as such must furnish a building not only safe and secure against thieves, but also one which is not liable to be destroyed by fire or ordinary causes. Wharton on Negligence, sec. 573; 2 Redf. on Ry's, sec. 18; *Whitney v. Railroad Co.*, 27 Wis. 342; *Pike v. same*, 40 Wis. 586; *Nichols v. Smith*, 115 Mass. 332; *Lane v. Railroad Co.*, 112 Mass. 462; *Barron v. Eldredge*, 100 Mass. 459; *N. A. R. R. Co. v. Campbell*, 12 Ind. 59; *C. R. I. & P. R. R. Co. v. Fairclough*, 52 Ill. 108; *Bartholomew v. Railroad Co.*, 53 Ill. 232; *Wilson v. Railroad Co.*, 9 Am. and Eng. R. R. cases, 161; *Cramer v. Am. M. & C.*, 56 Mo. 582. (2) The contract read in evidence cannot relieve the defendant from the liability for ordinary care as a warehouseman. This liability is

Vol. 83—8.

one imposed upon it by law and it cannot escape it by any contract relieving it from this duty. *Clark v. Railroad Co.*, 64 Mo. 447. See also: *Rice v. Railroad*, 63 Mo. 318; *Levering v. Railroad*, 42 Mo. 95; *Snider v. Adams Ex. Co.*, 63 Mo. 383; *Cantling v. Railroad*, 54 Mo. 390; *Sturgeon v. Railroad Co.*, 65 Mo. 572; *Read v. Railroad Co.*, 60 Mo. 199; *Ketchum v. A. M. U. Ex. Co.*, 52 Mo. 391; *Holtzclaw v. Duff*, 27 Mo. 395.

HENRY, J.—This suit was instituted to recover the value of a box and its contents shipped from San Francisco, California, to Moberly, Missouri. The petition contained two counts. The first charged defendant with a breach of duty, as a common carrier, in failing to notify plaintiff, or her agent, of the arrival of said box at Moberly, in failing to transport said box from St. Joseph, Missouri, to Moberly, and deliver the same, and its subsequent destruction by fire, at defendant's freight depot at Moberly.

The second count charged defendant with a breach of its duty, as a warehouseman, alleging that said box, after it reached Moberly, was stored by defendant in an unsafe, insufficient and highly inflammable building, to which fire was communicated by sparks and coals of fire which were negligently allowed to escape from an engine belonging to and operated by defendant.

The answer of defendant admitted that it was a common carrier, and received said box at St. Joseph from the Central Pacific Railroad, to be transported to Moberly; denied the other allegations of the petition, and specially pleaded the release and bill of lading, as hereinafter set forth, and that after safely transporting the box to Moberly, on the 1st day of April, 1881, in consequence of plaintiff's failure to call for and receive it, the box was placed in a safe, secure and suitable warehouse, where, without defendant's fault, it was on the 6th of April, 1881, destroyed by fire.

The following is appellant's statement, which respondent's counsel concedes to be fair in all particu-

lars, except in the description of the depot building where the cases of goods were stored after they reached Moberly:

On the 7th day of March, 1881, the plaintiff shipped one case of household goods from San Francisco, California to Moberly, Missouri, prepaying the freight therefor ($13.50) for the entire distance. The contract of shipment was made with the Central Pacific Railroad Company. At the time of making such shipment plaintiff executed a release, wherein it was stated that in consideration of the transportation of said case of household goods at the usual and customary rates charged *for goods of the same class, when the carriers are released from their extraordinary liability as such, the same being less* than the current rates for the same class of freight shipped under the carrier's legal responsibility, said railroad company and its connecting lines were released from all liability to plaintiff, or to the owner of the property, for loss or injury to said goods while in transit, except such as might result from the negligence of the carrier. At the same time the Central Pacific Railroad Company executed and delivered to plaintiff a through bill of lading for the entire transportation of said case; which bill of lading contained, among others, the following conditions:

1. That the goods must be removed from the station during business hours on the day of their arrival, or be stored, at the owner's risk and expense, and in the event of their destruction or damage, from any cause, while in the depot, no damages should accrue therefor.

2. That the carriers should not be responsible for loss or damage to goods from fire, from any cause whatever, while in transit or at stations.

The case of goods was transported by the Central Pacific Railroad and its connecting lines to Kansas City, Missouri, and was there delivered to the defendant. It left Kansas City on the railroad of defendant on the 30th of March, 1881, and arrived at its destina-

tion, Moberly, Missouri, on the next day, March 31st, 1881. The owner was not there to receive it; consequently it was unloaded from the car on the day following, April 1st, and was stored in defendant's freight depot, where it remained uncalled for until April 6th, 1881, when the building and contents, including the case in question, were wholly destroyed by fire. Defendant's freight depot at Moberly was a wooden building, similar to other buildings of its class on all railroads. The roof was of shingles which were getting old, and were somewhat curled up at the ends. Oil had been stored in the building from time to time, in the usual course of business, and some of it had been spilled upon and saturated portions of the floor planks.

The building had been rebuilt in 1869, reshingled, painted, and put in thorough repair. It was in good condition at the time of the fire; was secure as to the weather or thieves, had good strong doors which were securely locked at night, and was carefully watched and tended by careful, prudent, and competent men in defendant's employ. At the time of this fire the locomotive engines of defendant were all in good order, manned and operated by careful, competent and experienced engineers, and supplied with all the best known, approved and modern appliances for the prevention of the escape of sparks and fire, and on said day such appliances were in perfect working order and were carefully handled and inspected by competent men employed by defendant for that purpose. The Missouri, Kansas & Texas Railroad, a railway line then operated separately and under an independent management, crossed defendant's tracks near the freight depot in question, and one of the engines of that company, then in bad order, threw sparks upon the building while passing it, which set it on fire and burned it down.

There was no conflict in the testimony, either as to the contract of shipment, which fact was admitted by plaintiff, the age and condition of the freight depot or

warehouse, the condition of defendant's engines, their structure and careful inspection, nor that the building was burned by sparks falling on it from a defective M., K. & T. engine, then passing by it on the track of that company. There was a conflict in the testimony as to whether any notice was given of the arrival of the goods; Mr. Barrowman, defendant's freight agent at Moberly, testifying that he notified Mr. Lowell, plaintiff's cousin and agent at Moberly, on the 2nd or 3rd, and again on the 6th of April, of such arrival; while Mr. Lowell testified that no such notice was given him by Mr. Barrowman until the day of the fire, and just before it occurred. The market value of the articles lost was proven to be the sum of $296.55. The court admitted all evidence showing or tending to show the age, quality, and kind of material, its proximity to railroad tracks, and condition of defendant's freight depot, at the time of the fire, and to this ruling defendant excepted.

The following instructions were given in the case:

1. The jury are instructed that when the plaintiff did not, for any cause, demand and receive her goods, after their arrival at Moberly, it then became and was the duty of defendant to store them in a reasonably safe warehouse, under the charge of competent and careful servants, ready to deliver them when called for; and in the selection of said warehouse, and the care and custody of said goods, the defendant was bound to use ordinary care and diligence, such as a prudent person would exercise in the care and control of his own property of a like nature, under similar circumstances, and such care should be in proportion to the injury or loss likely to be sustained by any omission of such care on his part. And, if the jury believe that the defendant did not so store, care for and protect said property, and that by reason of its want of such care and diligence plaintiff's goods were destroyed, your finding must be for the plaintiff upon the second count in plaintiff's petition.

The court of its own motion gave the following:

"It was not the duty of defendant to notify plaintiff, or her agent, of the arrival of the goods, and if * * * defendant exercised ordinary care and diligence in placing the goods in a warehouse, or depot, that was reasonably safe from fire, they will find for defendant; and if they believe that defendant did not exercise such diligence and care * * * and in consequence of such negligence the goods were lost, they will find for plaintiff on the second count."

The jury found a general verdict for plaintiff, on which the court rendered a judgment, from which defendant has appealed. The first count, and all questions relating to it, are out of the case, the court having instructed the jury to find for defendant on that count; and this also answers and disposes of all objections to the verdict, as being general.

It has been a vexed question when the liability of a railroad company as a common carrier of goods ceases, after the arrival of the goods at their destination; but the weight of authority is, that on the arrival of the goods at their destination, after they have. been discharged from the cars, the liability of the railroad company as a common carrier ceases, and it becomes a bailee for hire. *Norway Plains Co. v. R. R. Co.*, 1 Gray 265; *Rothchild v. R. R. Co.*, 69 Ill. 164; *M. D. T. Co. v. Hallock*, 64 Ill. 284; *McCarty v. R. R.*, 30 Penn. St. 247; *Shenk v. Propeller Co.*, 60 Penn. St. 109; *Mohr & Smith v. R. R. Co.*, 40 Iowa 580; *R. R. Co. v. Kidd,* 35 Ala. 209; *Jackson v. R. R.*, 28 Cal. 268.

The contrary has been held by the courts of last resort of New. Hampshire, Wisconsin, Kentucky, New Jersey, Louisiana, Ohio and Kansas; but as early as 1858, the Supreme Court of this state, in *Holtzclaw v. Duff*, 27 Mo. 395, held that: "After the hemp (shipped over the H. & St. J. R. R.) reached the terminus of the road, and was removed from the cars, a different and less onerous obligation was assumed, and they became liable as warehousemen and forwarding agents, and as such,

were only bound to take reasonable care of the property, and were only answerable for losses occasioned by their fault or neglect." The same doctrine was reiterated by this court in *Cramer et al. v. Exp. Co.*, 56 Mo. 528. See also, Angell on Carriers (2 Ed.), secs. 302, 304. We must regard the law as so settled in this state. Nor is it necessary, in order that this change in the liability of the railroad company from that of a common carrier to that of a warehouseman may be affected that notice of the arrival of the goods at their destination should be given by the carrier to the consignee.

There is also a conflict of authority on this question, but in *Rankin v. Pac. R. R. Co.*, 55 Mo. 168, it was held that: "The rule in respect to notifying consignees of the arrival of goods does not apply to railroads, where the goods are delivered on time. They are not required, as carriers by wagons, to deliver at the place of business or house of the consignee, nor as carriers by water, to notify the consignee of the arrival at the wharf. Their route is confined to a track, and the delivery must be at a depot or by the roadside, and if there be no one to receive them, they may store them without charge for a reasonable time, till the consignee calls for them. It is the duty of the consignee to do so without notice, as the usual certainty of the arrival of the train renders such notice unnecessary." A warehouseman or other bailee for hire is only answerable for a loss occasioned by the want of ordinary care and skill. Angell on Carriers, sec. 415; Story on Bailments (9 Ed.), sec. 444. But a warehouseman may contract for a more restricted liability than that which the law imposes upon him. He may, by agreement, restrict his liability, except as to a loss occurring through fraud, or want of good faith. Angell on Carriers (5 Ed.), sec. 59; *Alexander v. Greene*, 3 Hill 9; *Wells v. Steam Nav. Co.*, 2 Comstock 208; Story on Bailments (9 Ed.), sec. 79.

But conceding, for the sake of the argument, that the correct doctrine is that announced in the leading

New Hampshire case, which has been adopted in some of the states, that the common carrier's liability as such continues until the delivery of the goods to the consignee, or, until after notice of their arrival, he has had a reasonable time within which to remove them; yet the manner of delivering the goods, and the period at which, after their arrival at their destination, the re- sponsibility of the common carrier will cease, may depend upon a special contract between the parties, or a local custom. Story on Bailments (9 Ed.), sec. 543; 1 Rawle 203; 15 John. 39; 17 Wendell 305; 1 Met. (Ky.) 558; 18 Mich. 131. In *Buckley v. Ry. Co.*, 18 Mich. 131, it was held that, in the absence of any usage, special circumstances, or agreement, the liability of railroad companies for goods in warehouse awaiting delivery, is that of a common carrier, and it was said by the court that: "The course to be pursued by the carrier, to shield himself from further responsibility, in his quality of carrier, when the transportation is accomplished, is not the subject of abstract law disconnected from the surrounding circumstances, but is a matter depending upon contract, and to be determined by reference to the express stipulations of the parties, or the varying facts from which, when presented, the law will infer the rights, duties, and obligations of the parties."

In the case of *Huston et al. v. Peters et al.*, 1 Met. (Ky.) 561, the court said: "But may not the manner of delivering the goods, and consequently, the period at which the responsibility of the carrier will cease, in some measure at least, depend upon and be governed by the custom of particular places, and the usage of particular trades, or upon a special contract between the parties?" Again: "*Prima facie* there must be actual delivery, or in the case of a carrier by water, a landing at the wharf or usual landing place, with due and reasonable notice to the consignee of the arrival of the goods. But the rule may be varied by contract, or affected by a well estab- lished, reasonable and generally known custom and usage."

The bill of lading given in this case was not only a contract relating to the transportation of the goods from the point of shipment to their destination, but, also, a contract prescribing the duties of the consignor and the carrier, after the goods reached their final destination. Under that contract, defendant was liable as a warehouseman, only for a loss occasioned by its gross negligence or bad faith. The instructions given by the court declared the defendant's duty and liability as a warehouseman as if there had been no written agreement restricting its liability. Again, the count upon which plaintiff was permitted to recover, declared against defendant *as a warehouseman*, and the court recognizing that defendant was such, virtually denied to it the right to limit its liability, a right beyond question, if it was a warehouseman, and under that count, it could not be held liable as a common carrier, but only as a warehouseman.

The judgment is reversed and the cause remanded, and before a retrial, it would be well for plaintiff to amend her petition, wherein it alleges that the warehouse was set on fire by sparks escaping from defendant's engine.

All concur except Norton, J.

NORTON, J., DISSENTING.—There is a conflict of authority as to whether it is the duty of a common carrier as such when goods transported arrive at their destination, to notify the consignee or owner of their arrival, and allow such owner a reasonable time after such notice to remove them. Whatever conflict and diversity of opinion may exist upon this question, an examination of the authorities will show, that they agree in announcing the principle that when goods arrive at their destination, it is the duty of the carrier to deliver them to the owner or consignee, if he is there to receive them, and, if he is not there, to deposit them in a reasonably safe and secure place for the owner. I will not

enter into an examination of these authorities, inasmuch as this court in the case of *Wilson Sewing Machine Company v. Louisville & N. R. R.*, 71 Mo. 203, expressly recognized the correctness of the principle in approving an instruction which declared "that it is the duty of a railroad company, where goods are safely conveyed to the place of destination, and the persons to whom they are directed are absent or cannot be found, either to hold said goods, or have them stored in some safe place for the owner."

The rule recognized also fixes the duty and obligation upon the carrier, as such, either to deliver the goods to the owner or store them in a reasonably safe and secure place for him. When the goods are so stored or deposited, the duty of the carrier is at an end, and that of warehouseman begins. While it may be conceded that a warehouseman or bailee for hire may restrict his liability by contract, it is at the same time established law, that the carrier cannot exempt himself from liability for a loss or injury occasioned by his negligence.

If it be his duty as carrier to deposit the goods for the owner, in the event of his not being present to receive them, or of his not being found, the carrier cannot, by contract, exempt himself from the consequences of his own negligence in not depositing the goods in a reasonably safe and secure place. In so far as the special contract set up by defendant exempted it from the performance of this duty, it is void.

I understand the plaintiff's cause of action, as stated in the petition to be founded upon the charge that defendant did not use ordinary care in selecting a suitable place for the deposit of the goods, but, on the contrary, carelessly and negligently deposited them in an unsafe and unsuitable warehouse, whereby they became lost to plaintiff.

The court below tried the case on this theory, as evidenced by the instructions given, and I think the theory was a correct one.