HOLTZCLAW *et al.*, Defendants in Error, v. DUFF *et al.*, Plaintiffs in Error.

1. The liability of warehousemen and forwarding agents is different from that of common carriers; they are responsible only for losses occasioned by their fault or negligence.

*Error to Hannibal Court of Common Pleas.*

The facts sufficiently appear in the opinion of the court.

*Lamb & Lakenan,* for plaintiffs in error.

I. From the plaintiffs' own testimony defendants were only shown to be carriers of persons and property on the Hannibal and St. Joseph Railroad. They carried upon no other thoroughfare. They were not in the habit of shipping their freight on board of steamboats or of storing it at Hannibal. Defendants were not common carriers. They were not responsible as common carriers for the loss in question. They transported the hemp safely to Hannibal. (See Story on Bail. § 546, 446; 4 Term R. 581.) The defendants had a right to exempt themselves from liability as common carriers. They did so by giving notice. (13 Barb. 353; Sto. on Bail. § 549; 2 Kent, Comm. 605; 2 Camp. 415; 3 B. & C. 606; 6 How. 382; 2 Comst. 204.)

*Dryden,* for defendants in error.

I. A carrier can not limit his common law liability by the publication of a notice such as is relied on in this case. (6 How. 382; Sto. on Bail. § 570, 571; see 2 Hill, 623; 19 Wend. 240; 19 Wend. 272.)

RICHARDSON, Judge, delivered the opinion of the court.

The defendants were the contractors for the construction of the Hannibal and St. Joseph Railroad, and used so much of the road as was finished in running cars for transporting materials for the work and in carrying passengers and freight

for compensation. They caused notices to be published and posted at the stations on the line of the road—which were seen by the plaintiffs before they made the shipments that led to this controversy—to the effect that they proposed, for the convenience of citizens along the road, to transport persons and the articles of merchandise therein named upon certain conditions, which should become a part of all contracts for transporting persons and property, to-wit: 1st, that they did not assume the position of common carriers, and would not be subject to any responsibility as such; 2d, that they would not be responsible for any loss or injury which might result from accidents to the trains, detention, exposure to the weather, or any other cause; 3d, that the owner must receive his goods on the arrival of the cars at the place of delivery; and, 4th, that as store-houses had not been provided at the stations on the road, they could not take care of property after its arrival at the place of destination, and therefore reserved the right, in case the owner should not be present to receive his property, to store it, subject to the charges for transportation, at the owner's risk and cost for drayage and storage. On the 1st and 2d September, 1856, the plaintiffs delivered to the defendants at the Palmyra dépôt two lots of hemp, in good order, which they agreed, in consideration of a reasonable reward to be paid by the plaintiffs, to carry safely to the Mississippi river (at Hannibal) and there to be safely delivered on board of a steamboat for the purpose of being carried to St. Louis. When the hemp arrived at Hannibal it was removed from the cars and deposited on the levee in front of the steamboat landing, and whilst lying there awaiting a boat, being insufficiently protected, was injured by rain. The defendants had no warehouse at Hannibal for storing freight, except a building fifteen by forty feet, which was sometimes used for that purpose; but a portion of it was occupied as a machine shop, in which a steam engine was in operation. It appeared however that there were warehouses in Hannibal, owned by different commission merchants, sufficient to have stored the

hemp, distant four or five hundred yards from the terminus of the road. The court instructed the jury that the defendants were common carriers; that they could not limit their common law liability as such by a general notice to the public, and that they were liable for any injury to the hemp from the time they received it until they delivered it on a steamboat to be carried to St. Louis.

It is not necessary for us, in the decision of this case, to determine the legal effect of the notice which the defendants gave the public, nor whether they were common carriers, for, whether they were such or not, the notice would not excuse them from loss occasioned by their negligence or want of ordinary care, and beyond that, in this case, they are not liable. Assuming, however, that they were common carriers, the fair construction of the contract is that they undertook to carry the hemp safely to the terminus of the railroad, and there to deliver it on board of a steamboat to be transported to St. Louis; and the contract subjected them to the liability of common carriers until the hemp reached the point where it left the road, and then to the liability of forwarders for storage and delivery to a steamboat. (Pierce Railroad Law, 451.) Both duties were embraced in one contract for hire, and, although there was no separate charge for taking care of the hemp after it reached Hannibal, and for shipping it to St. Louis, yet the freight, which the plaintiffs were bound to pay, covered the compensation for the whole services, for the storage and forwarding as well as for the carriage. The contract imposes distinct duties, for a failure in which the defendants were subjected to two separate liabilities in different degrees of responsibility; first, that of common carriers, and next, that of warehousemen and forwarding agents. (Sto. Bail. § 446.) As common carriers they were, to a certain extent, insurers of the hemp as long as it was *in transitu*, subject only to the exceptions which will excuse a delivery, arising either from the act of God or from the public enemies. But after the hemp reached the terminus of the road and was removed from the cars, a different and less

onerous obligation was assumed, and they became liable as
warehousemen and forwarding agents, and as such were only
bound to take reasonable care of the property, and were
only answerable for losses occasioned by their fault or neg-
ligence. This principle has a familiar illustration in the
leading case of Garside v. Treat & Mersey Nav. Co., 4 Term
R. 581. The defendants in that case, who were common
carriers between Stour-point and Manchester, undertook to
carry goods from the former place to the latter, and to for-
ward them from thence to Stockport. When the goods ar-
rived at Manchester there was no Stockport carrier there at
the time by whom they could be sent on, and they were de-
posited in the defendant's warehouse to await an opportunity
of being sent to the place of destination by the Stockport
carrier, but before an opportunity occurred they were de-
stroyed by an accidental fire. It was held that the carrier
was not liable, because his obligation as carrier had ceased,
and that of warehouseman had commenced before the loss.

It was the duty of the defendants to exercise ordinary care,
skill and diligence in preserving the hemp after it was taken
from the cars; and in determining what is reasonable care,
the nature of the commodity, its liability to injury from ex-
posure to rain, the kind of weather at the time it arrived,
the usual mode of storing or piling on the levee, and the
ordinary manner of protecting such property out of doors,
are circumstances to be considered by the jury; for what
would be deemed ordinary care in reference to lead, pig-
iron, or other articles of commerce not easily injured by
exposure, would be gross negligence in reference to flour,
grain, hemp or other produce affected by dampness and re-
quiring greater attention. When the plaintiffs delivered the
hemp to the defendants, they had a right to expect that they
would deal with it in good faith and take reasonable care of
it, and they must answer for any loss the plaintiffs have sus-
tained for the want of ordinary care on their part.

The other judges concurring, the judgment will be re-
versed and the cause remanded.