# E. O. Stanard Milling Company, v White Line Central Transit Company, *Appellant.*

## Division Two, May 24, 1894.

1. **Supreme Court Practice:** NEW TRIAL, APPEAL FROM ORDER GRANTING. On appeal from an order granting a new trial, the supreme court will review only the grounds for the new trial as set forth in the motion and order of court sustaining the same, and, if the new trial was properly granted on any of the grounds so assigned, the judgment will be affirmed.

2. **Practice:** NEW TRIAL. The trial court may grant a new trial for causes not assigned in the motion therefor.

3. **Common Carrier:** NEGLIGENCE. While the liability of a common carrier may be limited by express contract, yet it can not stipulate against its own negligence.

4. ———: BILL OF LADING. Where there is reasonable doubt as to the proper meaning of a bill of lading it will be construed most strongly against the carrier.

5. ———: ———: RAILROAD. A stipulation in a bill of lading that, the carrier will forward the freight with reasonable dispatch, "the dangers incident to railroad transportation, loss or damage by fire or the elements, while at depots, excepted," construed to mean that the carrier will be exempt from liability from the designated causes only at depots, where the cars containing the freight stop while in transit and not at the depot at the end of the route.

6. ———: ———: EVIDENCE. Where a bill of lading is competent evidence for any purpose it is properly admitted; it being for the objecting party to limit its effect by asking an instruction for that purpose if he so desires.

7. **Railroad:** STORED GOODS: NEGLIGENCE. A railroad company is required to use only the same diligence to save from fire property of a shipper stored in its warehouse at its destination as in the exercise of ordinary care it uses to save its own property.

8. ———: ———: ———: BURDEN OF PROOF. Where in an action against the carrier for the loss of the property so burned, the plaintiff alleges the carrier's negligence he must prove it.

Stanard Milling Co. v. Transit Co.

9. ——: ——: ——: ALLEGATA AND PROBATA. Where in such action the plaintiff charges that the carrier stored the property in a warehouse owned and managed by it and failed and neglected to exercise reasonable care while the property was so stored, evidence that defendant was negligent in storing it in a warehouse which was not safe because of its proximity to an inflammable refining establishment is inadmissible.

## Appeal from St. Louis City Circuit Court.

REVERSED AND REMANDED.

*Everett W. Pattison* for appellant.

(1) Plaintiff made no case entitling it to go to the jury, and defendant's demurrers to the evidence should have been sustained, both the one offered at the close of plaintiff's case, and that offered at the close of the whole case. *Gray v. Packet Co.*, 64 Mo. 49; *McLean v. Rutherford*, 8 Mo. 13; *Graves v. Poage*, 17 Mo. 91; *Whitney v. Bank*, 55 Vert. 155; s. c., 45 Am. Rep. 598. It follows that, even should it appear that errors were afterward committed, such errors could not have been prejudicial to the plaintiff. But no subsequent errors were committed. (2) The bills of lading were properly admitted in evidence, and their admission furnished no ground for setting aside the verdict. *Gashweiler v. Railroad*, 83 Mo. 112. (3) The instruction numbered 5, given at the request of defendant, was not erroneous, misleading, or prejudicial to plaintiff, and furnished no ground for setting aside the verdict. *Whitney v. Bank*, 55 Vert. 155; s. c., 45 Am. Rep. 598; *Chiles v. Garrison*, 32 Mo. 475; *McLean v. Rutherford*, 17 Mo. 91; *Gray v. Packet Company*, 64 Mo. 49; *Eddy v. Livingstone*, 35 Mo. 487; *Gashweiler v. Railroad*, 83 Mo. 112. (4) None of the remaining grounds set up by plaintiff in its motion for a new trial were well taken, and none of them furnished any ground for setting aside the verdict.

*Campbell & Ryan* for respondent.

(1) The trial court properly granted a new trial for the first reason given in its opinion. The bill of lading did not exempt defendant from liability for loss or damage by fire, while the goods were at the terminal station, and in its charge as warehouseman. *Gashweiler v. Railroad*, 83 Mo. 112. (2) The bill of lading should be construed strictly and most strongly against the carrier. 2 Redfield on Law of Railways [6 Ed.], p. 123, sec. 17; *Barter v. Wheeler*, 49 N. H. 9–31; *Nicholas v. Railroad*, 89 N. Y. 370; *Holsapple v. Railroad*, 86 N. Y. 275; *Elliott v. Railroad*, 33 N. Y. S. R. 861. (3) The trial court properly granted a new trial for the second reason given in its opinion. It was the duty of defendant, even as a gratuitous bailee, to exercise a degree of reasonable care that the average man would exercise and commensurate with the duty undertaken, the trust reposed in it, and the character of the goods, etc., and for a breach of this duty, it was liable, although it may have seen fit to make no effort whatever to save its own goods. Edwards on Bailments [3 Ed.] (1893), sec. 46; Story on Bailments [9 Ed.], secs. 63, 64, 65, 66; *Huxley v. Hartzell*, 44 Mo. 370; *Eddy v. Livingston*, 35 Mo. 487; *Rooth v. Wilson*, 1 Barn. and Ald. 59; *Doorman v. Jenkins*, 2 A. and E. 256 (Denman, J., 258; Taunton, J., 261). (4) The defendant was not a gratuitous bailee, but was a bailee for hire, and hence subject to the legal obligations of a bailee for hire, as stated under point 3, in respect to the care to be exercised in storing and looking after the property. (5) That no warehouse charge was fixed by the notice makes no difference; the defendant, after the notice, could charge what the storage was reasonably worth. 2 Redfield on the law of Railways [6 Ed.],

p. 86, sec. 11; Edwards on Bailments [3 Ed.] (1893), sec. 336, p. 256; *Gray v. Packet Co.*, 64 Mo. 49; *Dougherty v. Whitehead*, 31 Mo. 255; *Railroad v. Alexander*, 20 Ill. 23. (6) The trial court erred in giving instruction number 7 offered by defendant with respect to the burden of proof, and for that reason, also, the new trial should have been granted. The plaintiff having proved that defendant received the goods as warehouseman, and had failed to deliver them or pay their value on demand, the burden was then upon defendant to show it had exercised reasonable care in storing and keeping the flour; that being proved, the burden would have then rested on plaintiff of proving that the loss was due to defendant's negligence. *Kincheloe v. Priest*, 89 Mo. 240; *Wiser v. Chesley*, 53 Mo. 547; *Huxley v. Hartzell*, 44 Mo. 370; *Goodfellow v. Meegan*, 32 Mo. 280; *Taussig v. Schields*, 26 Mo. App. 318; *Collins v. Bennett*, 46 N. Y. 490; *Burnell v. Railroad*, 45 N. Y. 184; *Cummins v. Wood*, 44 Ill. 416; *Bennett v. O'Brien*, 37 Ill. 250; *Boies v. Railroad*, 37 Conn. 272; *Logan v. Mathews*, 6 Pa. St. 417; Shearman & Redfield on Negligence [2 Ed.], sec. 12; 2 Thompson on Trials, p. 1321, *et seq.* (7) The duty of defendant as a carrier of this flour was to deliver it to plaintiff upon its arrival in New York, or exercise reasonable care to store it in some safe and suitable place. *Machine Co. v. Railroad*, 71 Mo. 203; *Burnell v. Railroad*, 45 N. Y. 184; *Plains Co. v. Railroad*, 1 Gray, 263; Hutchinson on Carriers [2 Ed.], sec. 378; 2 Redfield on the Law of Railways [6 Ed.], p. 80. (8) That being done, its liability as a carrier was at an end, and its liability as warehouseman for hire commenced, and its legal responsibility in that capacity was to furnish a suitable warehouse properly secured in which to deposit the goods. *Remington v. Sheldon*, 10 R. I. 218; *Hatchett v. Gibson*, 13 Ala. 587; *Aldrich v. Rail-*

road, 100 Mass. 31; _Lane v. Railroad_, 112 Mass. 455;
_Express Company v. Baldwin_, 26 Ill. 504; Story on
Bailments [9 Ed.], sec. 450, note 2, page 415; Edwards
on Bailments [3 Ed.] (1893), secs. 344, 345; Hutch-
inson on Carriers [2 Ed.], sec. 378. (9) This fire was
a result that ought reasonably to have been anticipated
by an ordinarily prudent man, to have followed from
the location and continued use of the lard factory
building in the defendant's freight yards; this makes
defendant's negligence a question of fact for the jury.
_Miller v. Railroad_, 90 Mo. 389; _Poeppers v. Railroad_,
67 Mo. 715; _McGrew v. Stone_, 53 Pa. St. 436; _Huyett
v. Railroad_, 23 Pa. St. 374; _Railroad v. Pennell_, 110
Ill. 435; _Railroad v. Haworth_, 39 Ill. 347; Whitaker's
Smith on Negligence, 68. (10) Evidence that there had
been a previous fire in the building where this started,
was competent to show knowledge by the railroad that
the building rendered the freight yards unsafe. _Otis
case_, 112 Mo. 622; _Wood case_, 64 Miss. 661; _Stoher
v. Railroad_, 105 Mo. 192; _District of Columbia v. Armes_,
107 U. S. 519; _Railroad v. Richardson_, 91 U. S. 454;
_City v. Lowry_, 74 Ind. 520; _Gagg v. Vetter_, 41 Ind.
228; _Wooley v. Railroad_, 83 N. Y. 121; _Field v. Rail-
road_, 32 N. Y. 339; _Railroad v. Ashcraft_, 48 Ala. 15;
_Parkinson v. Railroad_, 61 N. H. 416; _Darling v. West-
moreland_, 52 N. H. 401; _Longabough v. Railroad_, 9
Nev. 271. (11) Evidence of the removal of the Wilcox
Lard Company's works to the Jersey side, and of the
rebuilding of a warehouse upon the same site, being
immediately subsequent to the fire was competent to
show that defendant knew it should never have per-
mitted such a business to be carried on in its freight
yards. _Gutridge v. Railroad_, 105 Mo. 520; _Brennan v.
St. Louis_, 92 Mo. 482; _Mitchell v. Plattsburg_, 33 Mo.
App. 555.

BURGESS, J.—This is an action against the defendant on its common law liability as a common carrier. The petition alleges that defendant "is a common carrier for goods for hire and as such received from plaintiff certain flour to be carried to New York and there delivered to plaintiff." It also avers that defendant carried the flour to New York, but did not deliver it to plaintiff, but stored it; that it reached its destination on the twenty-seventh, twenty-eighth and thirtieth days of March, 1889, and was, on the nineteenth of April, 1889, while in defendant's possession, by reason of the failure of defendant to exercise reasonable and ordinary care of the flour while so stored, destroyed and lost to plaintiff. The value of the flour, at the time of its destruction, is alleged to be $2,542.50.

Defendant, in its answer, admits the receipt and transportation of the flour; that it arrived at defendant's terminal depot in New York as alleged, and at the times mentioned in plaintiff's petition, but avers that it was transported under a special contract. It then, by way of defense, alleges: That the contract exempted it from liability for loss or damage by fire while at depots; that on the next business day after the arrival of each shipment, defendant gave plaintiff notice of such arrival, and that the flour was ready for delivery to plaintiff's order, and notified it that if the flour was not removed within twenty-four hours it would be stored at plaintiff's risk; that plaintiff did not remove the flour, nor order it delivered within the twenty-four hours; that thereupon defendant stored the flour and held it without charge to plaintiff until it was destroyed by fire. The answer then denies all allegations of negligence, and then sets up, by way of counterclaim, its demand for freight on the flour amounting to $261, which it avers plaintiff has never paid.

Plaintiff, by way of reply, denied all allegations in the answer.

The evidence showed the following state of facts: That the flour arrived at the sixteenth street station of the N. Y. Central & Hudson River Railroad Company, which was defendant's terminal depot in New York, on the respective days mentioned in the petition; that, from and after its arrival, defendant was ready to deliver it, lighterage free, at any point where plaintiff might order it delivered, on either side of the Hudson river, or of the East river, or at Staten Island; that within twenty-four hours after the arrival of the flour, plaintiff was notified of its arrival, that it was ready for delivery, and that, unless an order were given for delivery within twenty-four hours thereafter, it would be stored at the risk of the owner, and defendant would no longer be liable as carrier; that by the custom prevailing in New York, goods coming over the railroad lines consigned to persons in that city were permitted by the companies to remain at their depots, without charge to the consignees, until the latter should order them delivered; that plaintiff gave no order for the delivery of this flour, until after its destruction by fire on April 19, though it was held by defendant awaiting such order from twenty to twenty-two days, and that no payment or tender of the charges for transportation was ever made.

The flour was all stored in the freight house on pier D. This pier was entirely destroyed by the fire, as well as all but a small portion of its contents. Such portion of its contents as was removed was taken from the eastern or entrance end, where a space of about forty feet was cleared, mostly on the north side. The freight house on this pier was a two story building. The upper floor contained nothing but flour, a hundred car loads or more; and here two-thirds of

plaintiff's flour was stored. The remaining third was stored on the lower floor, on the south side, and three hundred feet from the eastern or entrance end of the building. The contents of the building when it burned were two hundred and three car loads of freight. A large proportion of this was flour, of which there were twenty-one thousand, two hundred and fifteen barrels, and one thousand, one hundred and fifty-one sacks, or between one hundred and twenty and one hundred and thirty car loads. Two of plaintiff's witnesses, Haskell and Briggs, testified that is would have taken, under the most favorable circumstances, two days to remove the contents of this building; that it would have taken a whole day to clear the lower floor, and to do that it would have required extraordinary facilities.

Between Fifty-ninth and Sixtieth streets there stood a double four story brick building owned by the N. W. C. R. R. Co., and divided by a three-foot party wall, the south half being occupied by the Rossiter Storage Company, the north half by the Wilcox Lard Company, a lessee of the railroad company, and an occupant of the building for seven or eight years prior to the fire; the evidence showed that this portion of the building was filled with fatty substances, the upper story containing tanks filled with oil, the floor being saturated therewith, and that fire had broken out in an upper story of this building about February, 1888.

The fire commenced between 3 and 4 o'clock in the afternoon, in the southern, or Wilcox half of this building, which was usually called, as a whole, the Rossiter building. The railroad company had no control of this building or any part of it. While the fire was burning in the southern half of this building it communicated to the shed situated on the pier at the foot of Fifty-ninth street, and consumed it with its contents. After that the fire broke out in the northern

half of the Rossiter building. From the Rossiter building it communicated to elevator A; from that to Elevator B; and from B to Pier D, where the fire was stayed. The duration of the fire seems to have been between five and six hours. The various witnesses whose testimony was introduced by plaintiff vary somewhat in their estimates, as they do also as to the time at which the successive buildings took fire, and the length of the intervals between the ignition of the successive buildings. It seems to have been from four to four and a half hours after the first alarm that Pier D. took fire.

When the fire was first discovered it was not anticipated that it would extend as far north as Pier D. The officers of the fire department assured the officers of the railroad company that they would save the pier, and that they would have no need of moving the freight; that they would only be in the way, and if left alone they would save the pier. The fire chief expected at first to confine the fire to the building in which it had its origin. While Elevator A was on fire, and after Elevator B had caught, which was about three hours after the fire was first discovered, they expressed the conviction that there was no danger to the pier. Sparks and cinders, however, from the burning building were falling all over the yard. The danger from this source was met by defendant: *first*, by placing men with water and with brooms on the roofs of all the freight houses, and by running hose so as to play on the elevators and other buildings; *secondly*, by running the cars, which were standing in the southern part of the yard near the fire, up northwardly out of danger.

While elevator B was burning and after pier D was threatened, as much freight as possible was removed. The company put all of its own men, and as many men as it could hire from the crowd of bystanders, at work

rolling out bales, boxes, barrels and other freight. They worked about an hour, but did not succeed in clearing more than forty feet of the north side of the eastern end. While the evidence showed that plaintiff's property was all consumed by the fire, it also showed that defendant did save a part of its own property. But it did not show that the defendant's servants or agents neglected property in its care, in order to save the property of the company, or that any more care was exercised to save its own property than to save that which was in its keeping belonging to others.

At the close of plaintiff's evidence defendant asked the court to give the following instruction in the nature of a demurrer to the evidence:

"Upon the pleadings and the evidence offered by plaintiff, the jury are instructed that plaintiff is not entitled to recover."

The instruction was refused and defendant duly excepted at the time.

The only instruction as to which any question is raised in this court is number 1, given at the instance of the plaintiff, and numbers 5, 6 and 7 for defendant. Instruction number 1, given at the instance of the plaintiff, is as follows:

"1. The court instructs the jury that, though they may find from the evidence that the origin of the fire which destroyed the flour was accidental, yet, if they believe from the evidence that the flour might have been saved by reasonable efforts by defendant or its employees, then the defendant is liable for the loss; and the jury are instructed that the degree of effort, care and foresight required of defendant was such as might reasonably be expected of persons of ordinary common sense and prudence, engaged in like business, and under the exigencies of the situation, as shown by the evidence."

The remaining three were given at the instance of defendant, and are as follows:

"5. The jury are instructed that the defendant was bound only to exercise such care with reference to all the property in its charge, as a man of ordinary prudence would have exercised under all the circumstances of the case as shown by the evidence; and it was not bound to exercise any more care to save the property of plaintiff than to save the property of other persons in its charge or its own property. And if the jury believe from the evidence that defendant did exercise proper care, as above explained, the verdict must be for the defendant.

"6. The jury are instructed that the defendant was not bound to single out plaintiff's flour and save it before all others. The most that could be required of defendant was that it should use such diligence and make such efforts to save the property generally in its care as would under all the circumstances be reasonable. If, with such efforts and diligence, it could save only a part of the property in its care, plaintiff has no right to complain because its property was not a part of that saved.

"7. It is not for the defendant to prove that it did exercise due care, but for plaintiff to prove that it did not; that is, the burden of establishing that defendant did not exercise proper care, as explained in the previous instructions, rests upon the plaintiff."

Instruction number 8 was asked by plaintiff and refused, and reads as follows:

"8. The court instructs the jury that after the arrival of the flour in New York, and while in its warehouse, the defendant was under obligation to keep the flour in a reasonably safe place; and if you believe from the evidence, in view of all the circumstances in evidence, that the railroad company did not keep it in a

reasonably safe place, and as a result thereof the flour was destroyed, then you will find a verdict for the plaintiff.''

Under the evidence and instructions of the court, the jury found a verdict against plaintiff for damages, and for defendant against plaintiff for the full amount of the counterclaim, $268.83. Plaintiff, in due time, filed its motion for a new trial, alleging the following grounds therefor:

"*First.* The action of the court in overruling plaintiff's request to be permitted to read the cross-examination of witnesses Haskell and Briggs.

"*Second.* The fact that defendant was allowed, on cross-examination of E. O. Stanard, to bring out before the jury incompetent, irrelevant and immaterial evidence.

"*Third.* That the court admitted incompetent, irrelevant and immaterial evidence, offered by the defendant.

"*Fourth.* That the court erroneously sustained defendant's objection to proper and competent evidence offered by the plaintiff.

"*Fifth.* That improper instructions were given by the court, and proper instructions refused.

"*Sixth.* That the verdict of the jury was against the law and the evidence, and the weight of the evidence.''

The motion was sustained, and the judgment on the verdict was set aside, on two grounds: *first*, that the bills of lading were improperly admitted in evidence; and, *second*, that the instruction numbered 5 was erroneous. To which action of the court defendant duly excepted, and in due time perfected its appeal.

This being an appeal from an order of the court granting a new trial, nothing can be considered by this

court, save and except the grounds set forth in the order of the court for sustaining the motion as appears from the record, and the grounds set forth in the motion itself. As the evidence was in favor of the appealing party, he is not in a position to complain of any adverse ruling of the court prior thereto, and only such matters as occurred during the trial will be passed upon as are necessarily involved in the consideration of the questions raised in the motion for a new trial, and in the order of the court granting it; and if, for any one or more of the causes thus assigned, the new trial was properly granted, the judgment must be affirmed; otherwise, reversed.

That the court had the inherent power to set aside the verdict and grant a new trial for the causes assigned in the order, independent of the motion for a new trial, is now well settled law. *Hewitt v. Steele*, 118 Mo. 463; *Lovell v. Davis*, 52 Mo. App. 342, and authorities cited.

The first ground upon which the order granting the new trial was sustained as appears from the record, was that the court erred in admitting illegal evidence on the part of the defendant. This is, also, plaintiff's third assignment in the motion to set aside the verdict. This action of the court was predicated upon its ruling in admitting in evidence over the objection of plaintiff, the bills of lading offered by defendant. One of them is here given in full, the two being exactly alike as to the number of barrels carried. It is as follows:

Stanard Milling Co. v. Transit Co.

# Indianapolis & St. Louis Railway Co.

## FAST FREIGHT LINE.

### GENERAL FREIGHT OFFICE, CHAMBER OF COMMERCE, ST. LOUIS, MO.

**White Line**

Route_____

East St. Louis, 3-19, 1889.

RECEIVED from E. O. STANARD MILLING COMPANY the following property, in apparent good order, except as noted, which they agree to forward with as reasonable dispatch as their general business will permit to ———————— Station, and there deliver unto consignee, or next common carrier, if destined to a point beyond the line of this Company's road, upon payment of freight and charges, the dangers incident to railroad transportation, loss or damage by fire, or the elements, while at depots, excepted; and the further exception of the dangers of lake, river and canal navigation if forwarded *via* lake, river or canal.

(Original.)

**Marks.**

REGULAR BILLS OF LADING.

Royal Patent    |    150 Barrels Flour, W. L. 1248.

Do.    |    150 Barrels Flour, W. L. 8605.

SUBJECT TO CONDITIONS OF COMPANIES'

Contract Rates From East St. Louis To New York, ................. per 100 lbs. 58c. per barrel. WEIGHTS AND CLASSIFICA-TIONS SUBJECT TO CORREC-TIONS.

E. O. Stanard Milling Co.

New York,

Lighterage Free    N. Y.

(Signed)    M. P. KELLEY, Agent.
S.

Defendant's first contention is that the bills of lading were admissible in evidence for all purposes and when thus admitted they showed by their terms it was exempted from loss or damage by fire while at depots, and that, as the loss was occasioned by fire after the arrival of the flour at the depot in New York, by the terms of the contracts, it was relieved from any liability as common carrier.

That the liability of a common carrier may be limited or modified by express contract seems clear. *Navigation Company v. Merchants' Bank*, 6 How. (U. S.) 382; *Moses v. Railroad*, 24 N. H. 90. But it is equally clear that losses or damages occasioned by negligence can not be stipulated against; and that, if there be a reasonable doubt as to the construction of the contract, it is to be construed strictly and most strongly against the carrier. As was said in *Barter v. Wheeler*, 49 N. H. 31: "We think, also, that, to justify the finding of the discharge of a common law liability by the assent or agreement of the consignor, and especially by means of a bill of lading, which is the act of the carrier alone, the terms ought to be explicit and unequivocal, and doubtful expressions ought to be taken most strongly against the carrier, and such, we think, has been the general doctrine both in the English and American courts." 2 Redfield on Law of Railways [6 Ed.], p. 123, sec. 178, par. 17; *Nicholas v. Railroad*, 89 N. Y. 370; *Holsapple v. Railroad*, 86 N. Y. 275; *Elliott v. Railroad*, 11 N. Y. Supp. 691.

The bills of lading provide that the defendant company "agree to forward with as reasonable dispatch as their general business will permit to —— station and there deliver unto consignee or next common carrier, if destined to a point beyond the line of this company's road, upon payment of freight and charges, the dam-

ages incident to railroad transportation, loss or damage by fire, or the elements, while at depots excepted.''

It is by no means clear that the depots excepted included the depot at the point to which the flour was to be shipped and especially when taken in connection with the words ''damages incident to railroad transportation,'' which seem to have reference to damages incurred while in transit. Construing the bills by the rule announced by the foregoing authorities, we must hold that the words ''while at depots'' only refer to the depots at which the cars containing the flour might be stopped while *en route* to New York.

If, however, the bills of lading were admissible in evidence for any purpose there was no error committed in permitting them to be read in evidence to the jury. They were, we think, admissible in evidence in support of defendant's counterclaim. In fact they were the best evidence at defendant's command, as they showed the rate of freight to be paid defendant for the transportation of the flour. Defendant had the right to introduce all the legitimate evidence that it saw proper and that its counsel thought necessary in support of its counterclaim, and this, even though it may have there-tofore introduced other evidence in regard to the same matter; and if plaintiff thought the effect of the freight bills ought to have been limited, the court should have given an instruction so limiting them, if it had been asked to do so. *Garesche v. St. Vincent's College*, 76 Mo. 332; *Wright v. Gillespie*, 43 Mo. App. 244.

Another cause assigned by the court for setting aside the verdict was, that it committed error in giving the fifth instruction at the request of defendant. This instruction is criticised because it is argued that it is liable to the construction that defendant was under no more obligation to try to save the plaintiff's property in

its care than it was to save its own property. It told the jury that defendant "was not bound to exercise any more care to save the property of other persons in its charge than of *its own property.*"

It was admitted by the stipulation filed that goods coming into New York over the lines of the various railroads, terminating at said city, and consigned, lighterage free, to persons doing business in said city, as in this case, were permitted to remain, without charge to consignees, at the depot and stations of said railroad company in said city, until ordered by the respective consignees to be delivered to the railroad company, or until ordered by the company to remove it. The liability of the defendant, as a common carrier, ceased after the arrival of the flour at its destination, and its discharge from the cars. Thus it was held in *Holtzclaw v. Duff*, 27 Mo. 394. "After the hemp (shipped over the H. & St. J. R. R.) reached the terminus of the road and was removed from the cars, a different and less onerous obligation was assumed, and they became liable as warehousemen and forwarding agents, and, as such, were only bound to take reasonable care of the property, and were only answerable for losses occasioned by their fault or negligence." This is the rule announced in *Gashweiler v. Railroad*, 83 Mo. 112, in which the *Holtzclaw case* is cited with approval. See, also, *Cramer v. Express Co.*, 56 Mo. 528; Angell on Carriers [5 Ed.], secs. 302, 304.

When the flour was removed from the cars and stored, defendant occupied the relation towards plaintiff of warehouseman and was only answerable for loss occasioned by the want of ordinary care and skill. *Gashweiler v. Railroad, supra.* The want of ordinary care is said to be gross negligence. *McLean v. Rutherford*, 8 Mo. 109; *Gray v. Packet Co.*, 64 Mo. 47. Under the gratuitous bailment existing, the defendant was

only liable for gross negligence, the true test of which is whether the defendant took the same care of plaintiff's property as it did of its own. *Whitney v. National Bank*, 55 Vt. 154. This is the measure of defendant's duty as presented by this instruction which seems to us to in effect say that defendant was not bound to exercise any greater degree of care to save the property of plaintiff in its custody than a person of ordinary care and prudence might reasonably be expected under similar circumstances to take care of and save his own property. There was no error in giving the instruction.

Another cause urged why the court might and should have set aside the verdict and granted plaintiff a new trial, is that it committed error in giving instruction numbered 7, at the request of defendant, which imposed upon plaintiff the burden of proving defendant did not exercise proper care. Shearman & Redfield in their work on negligence (4 Ed., vol. 1, sec. 57), state the rule as follows: "In an action founded upon negligence, the burden of proof, of course, rests upon the plaintiff. * * * It is certainly the duty of the plaintiff to prove affirmatively that the defendant has been negligent. It is not enough for him to prove that he has suffered damage by reason of some * * * act or omission of the defendant. He must also prove that the defendant in such act or omission violated a legal duty incumbent upon him."

In a case where a bailee has neglected to deliver property to the bailor on demand, and no allegation is made by the plaintiff, in an action for a conversion of the property that it has been lost or destroyed by reason of the negligence of the defendant, the burden of proof rests on the defendant to account for the property. *Goodfellow's Ex'rs v. Meegan*, 32 Mo. 280; *Wiser v. Chesley*, 53 Mo. 547. But if the plaintiff

alleges, in his petition, what has become of the property, and avers that it was lost or destroyed through negligence or carelessness on the part of the bailee, the burden of proof rests upon him.

In *Read v. Railroad*, 60 Mo. 199, which was an action against a carrier whose bill of lading exempted it from loss by freezing, the court says: "When the loss of the goods is established, the burden of proof devolves upon the carrier to show that it was occasioned by some act which is recognized as an exemption. This shown, it is *prima facie* an exoneration, and he is not required to go further and prove affirmatively that he was guilty of no negligence. The proof of such negligence, if negligence is asserted to exist, rests on the other party."

The doctrine in this case was reaffirmed in *Davis v. Railroad*, 89 Mo. 340, and again in *Witting v. Railroad*, 101 Mo. 631, 639. So far as this question is concerned, it is not easy to discover any distinction between the *Witting case* and the case at bar. The court in that case says: "It must, therefore, be taken as the established law of this state that, when the cause of action stands on the ground of negligence on the part of the carrier, the burden of proof is upon the plaintiff. The authorities cited are not all agreed as to the ground upon which the rule stands. The true reason, it seems to us, is, that negligence is a positive wrong, and will not be presumed, though it may be inferred from circumstances. When the carrier brings himself within the exception he need go no further to relieve himself from his liability as insurer. The party who founds his cause of action upon negligence must be prepared to establish the assertion by proof."

In *Otis Co. v. Railroad*, 112 Mo. 622, it was held, in an action against a railway company for the loss of property from fire, wherein it was agreed that the bill

of lading contained an exception exempting the company from liability from loss thus occasioned, the plaintiff, to entitle him to, recover, must show that the fire was the result of the company's negligence, and the burden of proving such fact rests upon him. We must, therefore, rule this point against the plaintiff.

On objection being made by defendant, the testimony of witnesses for plaintiff, Gicquell and Haskell tending to prove the ownership by the railroad of the building in which the fire started; that it had been leased to the Wilcox Lard Company for seven or eight years; that it was so used and in such condition as to be very inflammable and dangerous in the freight yard; that it had caught fire about a year before the fire which destroyed plaintiff's property; and that the lard company, after the last fire, moved its works some distance away; and that the storage house then stood where the old building stood, was excluded by the court, in which it is contended that error was committed. It is argued that this evidence was admissible for the purpose of showing negligence upon the part of the defendant in storing the flour in a place where it might reasonably have been apprehended that it was in danger from fire, and that defendant, by the exercise of reasonable diligence, might have saved the flour after the fire started.

With respect to the first objection under this point, the cause of action is predicated upon the failure of defendant to exercise reasonable and ordinary care of said flour while it was stored, by reason of which it was consumed by fire. The petition alleges that defendant "stored the flour in a warehouse owned and managed by the defendant" and "that defendant failed and neglected to exercise reasonable care of said flour while so stored." No place is to be found in the petition where it is averred that by reason of its *prox-*

*imity* to a refining establishment, or for any other reason, the warehouse was not a safe one in which to store the flour. The evidence was clearly inadmissible under the allegations in the petition and was properly excluded. *Yarnell. v. Railroad*, 113 Mo. 570. It had no tendency whatever to show that the warehouse itself by reason of its infirmities or manner of construction was unsafe, which was the effect of the averment in the petition.

Nor was the evidence of the removal of the Wilcox Lard Company's works, after the fire, and the rebuilding of a warehouse on the same site, immediately subsequent to the fire, competent to show that defendant knew it should never have permitted such business to be carried on in its freight yards. Such evidence was not admissible to show negligence on the part of the defendant in failing to store the flour in a suitable warehouse, for that must be made out by proof of the condition of the warehouse in which the flour was stored. *Brennan v. St. Louis*, 92 Mo. 488; *Mitchell v. Plattsburg*, 33 Mo. App. 555; *Alcorn v. Railroad*, 108 Mo. 81; *Mahaney v. The St. Louis & H. Railroad*, 108 Mo. 191. And it is not claimed that it was not reasonably safe on account of any infirmities that it possessed.

Defendant under the evidence as disclosed by the record, was in no way responsible for the fire in the first place, and seems to have done everything possible, with the agencies at its command after it had broken out, to stay its progress, and to protect its own property and that which was under its control. We can not say that the verdict was not for the right party, nor do we think that it was properly set aside for either of the causes assigned in the order of the court, or motion for a new trial. As there is nothing in the record which warranted the court in granting a new trial, its order

in so doing is set aside, and the cause remanded with
directions to the court below to enter up judgment on
the verdict in favor of the defendant.   All of this
division concur.