65  167
69  546
65  187
77  624

---

A. LARIMORE, Respondent, v. THE CHICAGO & ALTON RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, February 4, 1896.

1. **Common Carriers:** LIABILITY OF INITIAL CARRIER AS BAILEE. A common carrier which receives for carriage hogs consigned beyond its own route, but limits its liability to losses occurring on that route, may on the refusal of the connecting carrier to receive the hogs for further transportation place them in pens, and by so doing shifts its responsibility from that of carrier to that of warehouseman or forwarding agent, which is limited to the exercise of reasonable care.

2. **Practice, Trial:** WITHDRAWAL OF IRRELEVANT EVIDENCE. Error in the reception of irrelevant evidence is cured by the withdrawal of the evidence by instruction, when there is nothing to show that it exerted a harmful effect on the jury.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*J. G. Trimble* for appellant.

*W. W. Fry* for respondent.

BOND, J.—The first cause of action alleged in the petition is that defendant received from plaintiff on the twenty-eighth of November, 1894, a shipment of

ninety-two head of hogs to be transported from Mexico, Missouri, to Peoria, Illinois; that by reason of the negligence of defendant in unloading said hogs in the course of transportation at Jacksonville, Illinois, and placing them in infected pens, they took a contagious disease, whereby plaintiff was damaged $518.45. The second cause of action, in addition to the statements contained in the first, alleges that defendant negligently delayed the transportation of the hogs, whereby plaintiff was damaged $7.50 for extra feed and $35.25 for treatment and care of said hogs.

The answer was a denial of any undertaking to carry the hogs from Mexico to Peoria. It set up that they were received by defendant under a live-stock contract between it and plaintiff, executed in consideration of reduced charges and the furnishing of a pass to plaintiff to accompany the shipment, whereby the hogs were to be carried, under the conditions of said contract, from Mexico, Missouri, to Jacksonville, Illinois. The answer concludes to wit: "And other than the contract above set out defendant did not, on the twenty-eighth day of November, 1894, enter into any contract with plaintiff for the transportation of any hogs, nor did it undertake on said day to carry any hogs for plaintiff as a common carrier.

"Under the contract aforesaid it became and was plaintiff's duty to accompany said hogs and to load, unload, feed, water, and care for them at his own expense, and, if he expended any amount for food and care of said hogs, he did so under said contract and defendant is not liable therefor.

"Defendant says that under said contract and agreement, and not otherwise, it received of plaintiff eighty-five head of hogs on the twenty-eighth day of November, 1894, and safely, promptly and within a reasonable time, transported them from Mexico, Missouri,

to Jacksonville, Illinois, and there at plaintiff's request offered and tendered them to the Chicago, Peoria & St. Louis Railroad Company for transportation to Peoria, and, upon the refusal of the said Chicago, Peoria & St. Louis Railroad Company to receive said hogs, defendant delivered them to plaintiff, by whom they were taken in charge.

"Defendant denies that said hogs were unloaded by it or into pens owned by it, but avers the fact to be that the pens into which said hogs were put belonged to and were owned and controlled by certain persons not in any way connected with defendant, to wit:  S. S. T. S. and P. Knowles; and defendant had no interest in or control over said pens, and, if they were infected with a contagious disease peculiar to hogs, defendant had no knowledge or information thereof.

"Defendant denies that any loss or damage was occasioned plaintiff by reason of the carelessness, negligence or wrongful act of defendant, and, if there were, defendant was and is not liable therefor for the reason that plaintiff agreed that, if any loss or damage were suffered by him, he would within five days after the same occurred notify defendant in writing of the same, and he has failed and neglected so to do.

"Further, defendant says that it carefully and faithfully complied with the terms of its contract and performed all the duties incumbent upon it thereunder, and, therefore, prays to be discharged with its costs."

The reply was a general denial. On the trial plaintiff recovered judgment for $425, from which this appeal is prosecuted.

It appeared on the trial that the defendant safely carried the hogs to the end of its line at Jacksonville, Illinois, and tendered them to a connecting carrier between that point and Peoria, Illinois; that, upon the refusal of the latter to accept the hogs, they were

placed in hog pens, which defendant had the right to·
use, and kept there for about one day, when they were
received by the connecting carrier and transported to
Peoria, Illinois, their place of destination.    It further
appeared that the contract of shipment set up in
defendant's answer was executed by the parties.

Upon this evidence the court properly instructed
the jury that defendant's liability as carrier ended,
under the clause in the shipping contract limiting its
liability to losses occurring on its own line, when the
hogs had been placed in the pens at Jacksonville after
the refusal of the connecting carrier to receive them
when they were first tendered.    *Hance v. Railroad*, 56
Mo. App. 483; *Dimmitt v. Railroad*, 103 Mo. 433; *Nines
v. Railroad*, 107 Mo. 475.    The issue as to the liability
of   the   defendant   under   the   foregoing   facts   was
restricted to the circumstances under which the hogs
were unloaded by defendant at the end of·its line.    By
placing them, upon the refusal of the connecting car-
rier to accept, in pens, the defendant shifted its liabil-
ity as carrier to that of custodian of the property, or
forwarding   agent.    *Holtzclaw v. Duff*, 27 Mo. 392;
*Bennitt v. Railroad*, 46 Mo. App. 656;  *Stanard Milling
Company v. Transit Company*, 122 Mo. 274, 275.    In
the leading case, *Holtzclaw v. Duff, supra*, it is held
that the freight paid the initial carrier for the trans-
portation of goods over its line covers not only the serv-
ice of  carriage, but also that of  forwarding to a
connecting carrier; that such a contract imposes dis-
tinct duties, i. e., that of carriage and that of ware-
houseman or  forwarding agent, and that the only
liability incurred in the latter capacity is for a reason-
able care of the property while it is held for delivery to
the connecting carrier.

The instructions of the court, which told the·jury
in effect that defendant's liability as to the injury

caused by storing the hogs in infected pens depended upon the exercise of ordinary care or reasonable diligence, was well warranted by the doctrine of the case quoted. Hence, there is no merit in the objection made by appellant to all the instructions given by the court, in that they prescribed this degree of care.

The next objection made by appellant is that instructions 1 and 2, given by the court at plaintiff's instance, do not predicate the right of plaintiff to recover upon a finding that the hogs contracted cholera from being put in the pens. These instructions told the jury that plaintiff could only recover upon showing that he was *damaged* by reason of his hogs having been confined in pens infected with a contagious disease. The court, however, of its own motion gave the jury the following instruction:

"The court instructs the jury that the burden is upon the plaintiff to show by preponderance, that is, the greater weight of the evidence in the case:

"1. That his hogs died of a contagious disease;

"2. That the stock pens at Jacksonville, Illinois, were infected with said disease;

"3. That the hogs contracted said disease in said pens;

"4 That defendant knew said disease was contagious;

"5. That defendant knew said pens were so infected at the time the hogs were unloaded into them, or by exercise of reasonable diligence might have known such fact;

"6. That defendant knew said hogs were about to be unloaded into the pens so infected, and negligently, carelessly and recklessly, permitted it to be done without notifying plaintiff of the danger to the hogs.

"And, unless he has proven all six of these facts by the preponderance of the evidence, he can not recover, and the verdict must be for the defendant."

The foregoing instruction given by the court demonstrates that the issue of defendant's liability was submitted in an unexceptionable manner, and that the jury could not have been misled by any want of verbal fullness in the other instructions. This point is, therefore, ruled against appellant.

It is next contended that instruction number 4, given by the court for plaintiff, was faulty, in that it referred to the knowledge of defendant as to the custom of its connecting carrier in running trains on Thanksgiving day, which was the day on which plaintiff's shipment reached Jacksonville. This objection is untenable. The testimony of Jeffries shows that such was the custom of the connecting carrier, whose agent he was at the time, and that he supposed it was known to the defendant.

It is further contended by appellant that the judgment should be reversed, because the court permitted some testimony tending to show an attempt between the parties to change the route of the shipment from that designated in the shipping contract. No change in fact was made in the route by the parties, and the evidence referring to a proposition to that effect was withdrawn from the jury by instruction. There is nothing in its relation to the other evidence in the cause or to the point in issue, from which its reception could have prejudiced the minds of the jury. The only point in this case, as was distinctly expressed in the court's instructions, grew out of the facts attending the unloading of the hogs into the pens at Jacksonville, Illinois. Unless the jury found that defendant failed in this respect to exercise ordinary care, they could not have found for plaintiff. The evidence as to

the proposed change of route did not, therefore, bear on the point in issue. Neither was there anything in the surrounding circumstances to show that it exerted a harmful effect on the mind of the jury. Hence, if there was a misreception, it was cured by the instruction of the court withdrawing it from the jury. *O'Mellia v. Railroad*, 115 Mo. 205; *Mueller v. Weitz*, 56 Mo. App. 36; *Meyer v. Lewis*, 43 Mo. App. 417; *Wills v. Railroad*, 44 Mo. App. 51; *State v. Rothschild*, 68 Mo. 52.

Neither is there any merit in the point made by appellant, that notice of plaintiff's claim of damages was not given within the time fixed in the shipping contract. The record shows that there was some correspondence between plaintiff's attorney and freight agent of defendant, before the nature and extent of plaintiff's loss was ascertained, in relation to a claim for a small amount for extra feed. It also shows that as soon as plaintiff's loss had happened, about December 22, 1894, his attorney notified defendant that it would be held liable therefor in addition to the amount claimed for extra feed. There was ample evidence that the pens, wherein the hogs were placed at Jacksonville, from June to December, 1894, had been filled with other hogs which showed signs of disease, commonly known as cholera; that the same is a contagious disease and generally manifests itself about ten days or two weeks after the subject has been exposed to its effects; that plaintiff's hogs about two weeks after they had left Jacksonville became affected with this disease, and that about fifty-two of them died thereof; and that the loss sustained by plaintiff was equal to the verdict in his favor. The exceptions of the appellant to the depositions of the witnesses as to character and effect of hog cholera were not sufficiently

specific nor confined to particular interrogatories, and, therefore, present no matter for review.

Finding no reversible error in the trial, the judgment will be affirmed. All the judges concur.